The case for argument today is number 2010-5003, Pai Corporation v. United States. Mr. Phillips, when you're ready. This case is about a broken promise. The contracting officer made an initial award of the contract here in dispute on December 29, 2009. There was a post-award procurement protest filed with the Government Accountability Office on January 12, and the contracting officer stated contract performance pending resolution of that protest. The protest challenged the contract that had been awarded, asserting unmitigated unequal access to information and organizational conflicts of interest, which had created, according to the protest, an unfair competitive advantage. These unmitigated OCIs, if you will, were claimed to arise because the solicitation asked for the evaluation of three sample tasks for which the large business incumbent, Wackenhut, had already performed and which Wackenhut had detailed technical and cost information, and the OCIs had arisen, according to the protest, because the apparently successful small business offeror had a contract with the National Nuclear Security Administration requiring the assessment of Wackenhut's delivery of support services. Mr. Phillips, can I just interrupt you for a moment just to be sure what I can say, because I just note that your brief was confidential. The CFC opinion was under seal. I am not going to discuss any confidential information whatsoever. And the opinion remains under seal? The government's brief was not confidential. Right, and there is only a small portion of my blue brief that is under seal, and it is confidential only because the contracting officer's 13-page analysis itself remains under seal. Are you referring to the June 8th memo?  So that is out of bounds, I take it, the contents of that memo? Not necessarily the contents. Both sides have talked about the analysis that is made in that memo. The memo itself is under seal. Fine. Well, we will go ahead and give you a little extra time since this is housekeeping. Important housekeeping, but housekeeping nonetheless, so go ahead. All right. On February 17th, the National Nuclear Security Administration decided, and I am quoting, it was appropriate to take corrective action. They made promises. They promised that they would clarify and resolve where appropriate the OCIs. They promised that they would take appropriate steps, quote-unquote, to document these matters, and they promised that there would be a new source selection decision. They made a new source selection decision, the source selection official, on June 3rd. The contracting officer on June 8th then authored a 13-page analysis of the OCIs, and she concluded that the small business offeror, while he had had access to non-public information, the information was not competitively useful, and based on her interviews only with government personnel, that the contractor employees performing the oversight contract had been effectively firewalled from sharing the details with other contractor employees, and that while the large business subcontractor now, Walking Hut, had had similar access to non-public information, that information was not competitive. Mr. Phillips, what would be the test under your proposal as far as an individual company that bids on a contract that had the contract prior to the bid? Let's say it's a renewal contract. Which, in essence, this one was, except it was restricted now to small businesses. Well, it's restricted to small businesses. However, wouldn't a company that has the contract have a competitive advantage in re-bidding for the same contract? Yes, and there's absolutely nothing wrong with that competitive advantage, as long as the government contracting officer levels the playing field, if you will, by making sure that there is no non-public information that would be competitively useful. If that information is disclosed on an equal basis to all the small businesses, in this case, competing for the contract, there isn't a problem. Well, but let's say that company A has a contract. Yes. And companies B, C, D, and E would want to bid on a renewal of that contract. Right. Wouldn't company A have an inherent advantage because they are re-bidding on a contract which is one of their operations? They do have information which is not necessarily public in that regard. Isn't that an inherent problem within the competing? They have an inherent competitive advantage, but that competitive advantage is not unlawful under the rules. Only if, by having detailed information that is not shared, is the competitive advantage unlawful. In this case, and this goes to the heart of this matter, when this solicitation was initially issued in June a year prior, the contracting officer made an effort to give out some of this information to level the playing field. Turns out, however, that she was not then aware that the small business contractor that eventually got this contract itself had a separate contract to monitor the performance of the large business contractor walking on it. That is a classic unequal access to information OCI. But as I read your brief, what you are requesting us to do is to set up a rule where if a particular company is on a renewal basis bidding on the same type of contract they already have, you would want all of that information of that particular company, which is an inherent advantage because they already have the contract and it is a renewal of the same contract, to be disseminated to all of the bidders? Your Honor, I am not asking the court to impose any rule whatsoever. What I am asking the court to do is to ensure that the United States in this matter complies with its own rules. And in this case, because there was an OCI, an organizational conflict of interest, what the contracting officer analyzed, how she analyzed it, and her conclusions under the rule were required to have been reviewed and approved by the head of the contracting activity, and they were not. But the contracting officer would have to decide under the procedures outlined under 9.506B, that a particular acquisition involves a significant potential organizational conflict of interest. So that is the OCI. Yes, and she did, and that was reported to the GAO, on which basis GAO dismissed the protest in February of 2009. She reduced her analysis and her review to writing in a 13-page memo, which she signed on June 8th. The problem is that that memo itself, her analysis and the method by which she conducted it, were never reviewed and approved by the head of the contracting activity. She was not authorized to make this warrant. The warrant is there. Can I ask you, is the number of your argument about her, there was a so-called fix in the interim. I mean, after the initial questions were raised, she issued quite a bit of information to all of the potential bidders, right? And is the number of your argument that doing that establishes that there was enough of an OCI so that that action should have been approved, that pre-solicitation action? No. There was a protest before the solicitation was ever issued, a year prior, which the head of the contracting activity considered and resolved. She made some changes to the solicitation. The solicitation was issued. The proposals came in in October. In her 13-page memo, she notes that now, for the first time, she becomes aware that one of the offerors has an entirely separate contract where he's monitoring the performance of the large business contractor and that he has non-public information. She decides, however, that that wasn't necessarily an unequal access OCI. Instead, it was an impaired objectivity OCI, and because that Office of Information Oversight contract, the OIO contract is what it was called, hadn't been awarded, she was going to go ahead and award him this one and not worry about it. Well, then came the protest, and the contracting officer obtained the dismissal of the protest at GAO on the representation that she would do something about it. She did something about it in a 13-page memo. The problem in this case is what she did was never reviewed and approved. That's the problem. If the steps that she had taken had been vetted to the head of the contracting authority, activity, right, would that, in your view, solve all the problems in this case? We wouldn't be here. Okay, so it's a matter of the failure to submit to the head of the contracting activity. Yes, that's exactly the point. The whole case rests on that. Yes, it does. And the failure to submit what in particular, her subsequent memo or her decision to add the, do the other things in the pre-solicitation process, what was her failure there? Her failure was she wrote up a 13-page memorandum, which she signed. Her conclusions and the methods that she arrived at those conclusions should have been vetted by a senior level official, the head of the contracting activity, and they were not. And the memo in essence, I'm hesitant about talking about it, but in that document she concluded that there was no OCI. Right. So you're saying that the only problem was that her determination that there's no OCI should have been something under the regs that should have been approved by her superior. Clearly should have been reviewed and approved by the superior. And under the regs, without that review and approval, she had no authority to let the contract proceed. Even though there was no finding of an OCI. Her finding that there was no OCI had to be reviewed and approved before it was effected. But isn't it the other way around? No, if there is a finding of an OCI, that needs to be reviewed. But if there's no finding of an OCI, it does not need to be reviewed. No, that's not the way the rules require. It's in 9506. 9506. Your Honor. 9506B. Followed by 9506C, which says what the reviewing official shall do. And then 9506C3 says at the point you get down to contract award, the contracting officer then resolves it in a manner consistent with what the HCA says. The contracting officer here had made some minor adjustments to the solicitation before all this came up. Then she, only then did she realize that, uh-oh, the contractor that the source selection official has selected, and it wasn't the contracting officer, has a separate contract with us to monitor the performance of the large business that was performing it. That's a problem. But I don't think the information they had access to was competitively useful. And they had a firewall, but I can't find it. That's also in there. But you're arguing with the finding of no significant OCI. I'm not arguing with the finding. What I'm arguing with is the fact that the finding was never reviewed and approved. But there was no finding of significant OCI under the regulations. If there's no finding, it does not need to be reviewed. If there's a finding of OCI, significant OCI, then it needs to be reviewed. Yes, that's true. But the agency told the Government Accountability Office, well, we have a problem, we're going to fix it. That's the promise I'm talking about. What is your view, just to make sure I understand the sequence of events that should occur as you see the operation of the regulations. The contracting officer says one of the things I need to check into here is whether there's an organizational conflict of interest. Yes. And she looks at everything and she concludes, no, there's not any organizational conflict of interest. She's done, right? She doesn't have to run that by anybody? That's correct. Right, okay. And if she says, well, you know, there would be a potential organizational conflict of interest, but I can avoid it altogether by the way that I structure the solicitation. Now, so she says, I'm going to structure the solicitation so there never will be an organizational conflict of interest. We'll sidestep any problems that would have arisen if we'd gone this way with the solicitation simply by going this way. Now, once she makes that decision, don't worry about your time. I'm going to give you some extra time. This is a long-winded question, so I'm almost finished. So if she does that, does she have to run that by the head of the contracting activity? Yes. Okay, even if that's done prior to the formation of the solicitation? Even if that's in the portion of the contracting activity before she actually fashions the solicitation? She's saying, well, I could write it this way, I could write it that way. I'm going to solve the problem by writing it in fashion number two. That's something she can't do by herself? That's correct. Okay. Okay. I'll, let's see. Was that during the pre-solicitation? Your Honor, this entire process, this entire effort. I'm trying to get the answer to what you answered, Judge Bryson. Does that include pre-solicitation? It includes pre-solicitation. It includes the solicitation all the way up to the award. Okay. Okay. We'll reserve your full rebuttal time. Thank you. Let's see. We have Mr. Crafter. Good morning. Good morning. Thank you for your support. Good afternoon. Thank you, sir. The decision of the trial court should be affirmed for three reasons. First, the trial court properly determined that FAR 9.506 and 9.5071 do not apply to this case under these particular facts and circumstances because the contracting officer never found there was an organizational conflict of interest. Second, even if those two provisions did apply, it appears from the record that it can be reasonably inferred in 2009 that the head of the contracting activity was aware of the contracting officer's OCI analysis. And I would submit to the court that is not in our brief because the panel did not raise the argument until the file that's replied brief concerning it. I don't understand. So you're saying if he was aware of it, that would satisfy the requirement that she submit it for approval? Yes, ma'am. Our argument with FAR is such that the contracting officer is required to do her analysis. And if she finds a significant potential organizational conflict of interest and takes steps to mitigate it, at that point she has to consult and receive H-State approval. And in the record, the source election document, which is at page 677 in the joint appendix, specifically the head of the contracting officer signed off on it, and that makes specific reference to the contracting officer's organizational conflict of interest analysis, which has been talked about already starting at 692 in the record. And so nowhere in the record does the head of the contracting activity specifically say, contracting officer, I see your OCI analysis, organizational conflict of interest, and I approve it. However, that issue, it's not specifically identified on the record. But we think it's reasonable to infer that we disagree with Appellant's interpretation of the FAR, but we think even if Appellant is correct and these FAR provisions, 9506 and 95071, apply, we think there is enough evidence in the record as it stands right now. Okay. Show me the evidence because I'm a little confused. It seems if we assume the regulation applies in this circumstance, then you've got very clear language that says submit for approval to the chief contracting officer. Yes, ma'am. And tell us what we look at to satisfy ourselves, that it was submitted for approval and it was approved. There's nothing in the record that shows it was submitted for approval. There's no direct submission documents, Your Honor. Okay. But in the record, it's beginning at, let me check my notes, first starting at, it's the source selection decision document. It's at JA677. Yes. And that is a coordination and approval document, Your Honor, which was submitted at the bottom of the signatures on June 3rd, the head of the contracting activity signed off on that. Yeah. And then in the first two paragraphs in the source,  Yes. And then in the first two paragraphs, Your Honor, in two instances, the contracting officer's organizational conflict of interest is referred to in this document. Show me we are on 679. Yes, ma'am. In the first and second full paragraphs. Uh-huh. And if I may have a moment. Under the introduction? Under the introduction background, yes, Your Honor. Yeah, okay. And so first it lays out the background of why the agency elected to take corrective action where appropriate and actually document our organizational conflict of interest. And then beginning with the sentence, as part of the corrective action the integrated project team, IPT, reconvened to reconsider potential organizational conflict of interest and reevaluate proposals for past performance and cost. I received a revised briefing from the IPT regarding its findings, consulted with ex-officio members, and have personally reviewed the revised evaluation report. We think that that serves, if nothing else, as a placeholder and indicates that the head of the contracting activity was, in fact, involved and aware of the contracting officer's organizational conflict of interest analysis. And therefore, at the end of the day, if this matter were remanded to the agency, which we don't think it should be, Your Honor, the head of the contracting activity would simply document what is already apparently in the record. Now, who is the head of the contracting activity in this instance? Because I'm either too many players here. I'm losing track. He's essentially the person who oversees the entire contract. I understand what his responsibilities are, but I'm actually asking. I'm looking at 678 and there's a Jeffrey P. Harrell. Is he the head of the contracting activity? No, sir. He is the source selection authority, so he has a delegation of authority from the head of the contracting activity. Okay. Is Craig A. Tucker the head of the contracting authority? Respectfully, Your Honor, I don't know. His name is here. I mean, who is it that is saying I in this case? It looks like it's Jeffrey P. Harrell. Yes, Your Honor. This is a source selection decision document. Right. So this is, is this, are you relying for the I on Mr. Harrell's delegated authority as head of the contracting activity? No, Your Honor. Or are you suggesting that Mr. Harrell knew all this and therefore his supervisor did or what? I'm sorry. Go ahead. I'm suggesting that this source selection decision document in its entirety was submitted to the head of the contracting activity. He reviewed it. He gave his blessing and he signed off on it on the coordination and approval document. So are you saying, when we're saying what he reviewed, are you talking about the June 8, 2009 document? Yes, ma'am. I'm saying. Well, how could he sign it on June 4? Because the signature date itself is not indicative that it was drafted on June 8. The organizational conflict of interest document by the contracting officer was drafted and submitted for peer review and legal review and up to the contracting officer's thoughts. And this typically happens in the manner in which a contracting officer prepares documents for review. Yes. So how do we know? We've got the document June 8. Let's assume it was rewritten entirely on June 7. I mean, we don't know. You're saying that we can satisfy ourselves that he reviewed something, but we have no idea what it is he reviewed. Well, presumably, Your Honor, he reviewed. That is the only. Yes, Your Honor. There's nothing clearly in the record saying that the document signed on June 8 was, in fact, reviewed. And that's why earlier I mentioned he doesn't make specific reference that the HCA actually sat down, reviewed the contracting officer's document and said, okay, I approve that. It seems to me we're pretty far off from the case that was before Judge Weiss. Yes, Your Honor. I mean, was any of this raised before Judge Weiss, this business of Mr. John Illegible, who seems to be the head of the contracting activity? No, Your Honor. This was in the record before the trial in court.  But we really can't freelance to this extent. I know. I apologize. The point we only wanted to make is that the issue before Judge Weiss and the issue before this Court is whether or not 9506B and 95071 apply to the contracting officer's activities in July of 2008 and June of 2009. And the trial court agreed with the contracting officer that there was never an organizational conflict of interest in any shape, not even potential or actual. And, therefore, that is an issue on appeal. But let's go back to the basics. If there is no direct issue regarding an OCI, if there is no OCI, does it have to be submitted to the contracting officer to decide there is no OCI? Does it have to be submitted to a superior officer at that point? Absolutely not, Your Honor. It doesn't even have to be documented, consistent with FAR 9504D. I presume that it would have to be documented in some way. No, Your Honor. The FAR makes clear, and consistent with this Court's precedent and axiom, the contracting officer has considerable discretion in performing the initial organizational conflict of interest analysis. And if she finds none, she doesn't have to document it. She doesn't have to submit it to ACA for approval. She simply does nothing. And if I may, upon the hypothetical offered by the Court to a balance counsel, in the scenario where the contracting officer simply thinks it's a potential organizational conflict of interest, during the pre-solicitation phase, she's well within her discretion to take steps to address that matter. The language in 9506, which would trigger HCA involvement, is a significant potential organizational conflict of interest. And there has to be a finding to that effect by the contracting officer before it triggers that particular section? Yes, sir. So is there any finding, a significant finding, by the contracting officer in this case? No, Your Honor. At no point in the record did the contracting officer ever say there was a significant or potential organizational conflict of interest. In fact, the representations the agency made to the GAO after the ATL, and I'm abbreviating so I cannot remember the full name, Your Honor, after the ATL-GAO protest were simply that they would evaluate and, where appropriate, take corrective measures. And that protest was dismissed at that point? Yes, sir. So this case is not about a broken promise. This case is about a misinterpretation and a misapplication of the FAR, facts and circumstances, unique to this case. Okay. Another question. Yes. I'm a little confused about what you just, your response to Judge Gallarza. Is it the government's position that the difference here is whether or not it's a potential conflict of interest versus a significant conflict of interest? And so potential conflicts of interest, unless they're labeled significant, do not fall under this? Is that the point? No, Your Honor. I'm sorry for not being clear. The point is there was no, there was never a finding of a conflict of interest of any type, significant or otherwise, in this case. What about a potential conflict of interest? No, Your Honor. The letter you just pointed, the statement you just pointed us to in our earlier discussion on 679 refers to, to reconsider potential OCI. So somebody thought there was something that we could call a potential OCI floating around, right? Yes, ma'am. All potential means is that, might there be a possibility, but the requirement to submit anything to the head of the contracting entity is such that there must be a significant potential organizational conflict of interest. Well, so if this statement, if the source selection statement had said on the fourth line on the second paragraph that you were pointing us to earlier, if it said reconvene to reconsider significant potential OCI's, then in your view that would fall under 506. But because it didn't use the word significant, it does not, does that mean? No, Your Honor. Okay. I'm sorry. It's our position that the contracting officer, it's a threshold requirement that the contracting officer has to find that there's an actual conflict of interest. And once there is, that would trigger the head of the contracting activity's involvement because the result is typically... Well, that's not what 506 clearly talks about circumstances in which you need to submit something for approval, and it never refers to a real OCI. It only refers to a significant potential OCI. So how can that be? Well, the full text of the regulation is at page 13 of our brief, Your Honor. Well, I've got my own copy. Yes. What I was angling at with that earlier comment was that if the contracting officer decides that a particular acquisition involves significant potential... Potential. Potential. Not an OCI itself, but a potential OCI. Potential, but it must also be significant. Earlier in my question... So yes, not to play semantics, Your Honor, but that's a term of art, and that word is in there for a reason, because it has to be significant, it has to be something... Okay, so my question again is on page 679 on the source selection statement, on line 4 of the second full paragraph, if it said to consider significant potential OCIs, you would agree that approval was required, but because it wasn't... The potential OCIs weren't identified as significant potential OCIs, you didn't need it? Is that the distinction that the government wants us to draw here? Yes, but we would also want the court to consider the fact that not only was there not a significant potential, the contracting officer never thought there was an organizational conflict of interest. She only performed the analysis in response to the GAO protest to avoid litigation. Contracting officers always have to consider potential organizational conflict of interest. That's part of their job, and in exercising their discretion and common sense and sound reasoning, they have to always look at a procurement. What I understood... Let me just step back a minute. What I understood the government's view of this case, or at least what the CFC characterized it, is the way you reconcile 506 is that in this case, she identified some potential, but she was able to remedy it in the pre-solicitation phase, that this provision is aimed towards prospective conflicts and what you would do in the solicitation to remedy prospective conflicts, but had nothing to do with things that could be taken up, cared of, and dissipated in the pre-selection process. That's what I understood the view to be about why 506 doesn't apply. Yes, Your Honor. And I was adding to that, saying that in fact there's even more, and since we started to go down the path of what a contracting officer must do and her responsibilities and activities and what she does on a day-to-day basis, it appears as if the appellant wants this court to take the discretion away from the contracting officer and say anytime there's a potential conflict of interest, you go right to the HCA. And the government's view is no, that's not true. Under what circumstances then, when there's a potential OCI, does she not have to go to the approving officer? I would say it's under the circumstance where if she does her analysis and determines there's nothing there, she doesn't need to go to the appellant. Well, nothing there. There's a potential OCI. Yes, there's a potential, but if she evaluates it and determines that there is in fact no, she recognizes the potential, she takes steps to correct it or remedy it, either pre- solicitation or even during the solicitation. Well, I'm sorry, let's focus on the pre-solicitation phase. During that time, she can draft a solicitation and that's what happened in this case that completely obviates any risk at all. In other words, so you're saying the reg applies when there's nothing where the potential OCI cannot be rectified or avoided in the pre-solicitation phase, so you're left with a solicitation that is going to engender future OCI. Yes, ma'am. And that's true, in your view, even if it's a potential significant OCI. Well, that's where we get into the discretion of the contracting officer. At some point, she has to use it. I'm sorry, Your Honor. Well, this is what I'm really confused, I'm afraid, and perhaps it's I'm missing something fairly obvious here, but the 504, which is the provision that I think you referenced in your brief, and it does start the ball rolling in this area, says that one of the things the contracting officer shall do is to avoid, neutralize, or mitigate significant potential conflicts before contract award. And that sounds fine, that's something you would naturally want to do. Now, so far, so good. But then we get to 506B and we're told that if the contracting officer decides that a particular acquisition involves a significant potential organizational conflict of interest exactly the same words that were used in 504, then she's supposed to go through this elaborate process, I take it. Yes, sir. But what's the difference between what she can do under 504 with respect to a significant potential conflict of interest, and what she is required to invoke the procedures of 506B with respect to a significant potential conflict of interest, and why on earth does the regulation use exactly the same language for those two, in those two regulations, if it means to allow the contracting officer to do more under 504 and to be restricted under 506B? It all depends on impact, Your Honor. 504 gives her much more discretion because the impact is simply that all the offer awards, she will modify the solicitation, and all the offer awards to include a potential incumbent can still compete. If she does it under 9506B, that directs her to 95071, which talks about future restrictions on competition. And as the Court is well aware, the whole purpose of the organizational conflict of interest rules is to level the playing field, enhance competition, and protect the integrity of the procurement. So perhaps, and obviously I'm speculating, Your Honor, but perhaps the FAR Council, when it drafted that language, thought, obviously pre- solicitation, there's a distinction between, as Judge Weiss found, and that's why his position should be affirmed, pre-solicitation phase, contracting officer is, as even her position, uses her considerable discretion to take action, level the playing field, and make sure when she's avoiding potential conflict of interest, that everyone is treated fairly. After the fact, once that solicitation is out there, there will then be a restriction, because there's a potential harm to the offer awards. I think that explains the distinction and the use of the same language in both. Well, you know, I 504 then has a broader discretion in the contracting officer's ability to make a determination of no CI? Yes, sir. Well, I would buy, I mean, that makes some sense to me. The problem I have with that analysis is 504C, because if you're trying to draw a line, a distinction between 504 and 506, the problem for you is C, which follows the language Judge Weiss was reading earlier, and says, before issuing a solicitation for a contract that may involve a significant potential conflict, they shall recommend to the head of the contracting activity for resolving it. So 504 in and of itself, you can't say 504 is free stuff that she can do on her own, and 506 is the subsequent stuff, because 504 itself requires approval by a higher level official, right? Yes, Your Honor, but in that case, that's why earlier I mentioned we're not attempting to play semantics with the use of the word significant, whereas I don't believe if I may, significant is used in the previous chapters. I have it in front of me. Well, it's used in A, and it's used in C of 504, and it's used again in 506, which all of which leads to, well, maybe someone who has been living with the FAR all their life can understand the distinctions, but I haven't, and I can't. Neither can I, Your Honor. I'm sorry about that. But 504D, and earlier we were talking about the contracting officer's discretion to make sure I'm reading this correctly, that uses potential. Instead of significant potential. I'm assuming that that was intentional. That's where we see the distinction. So, because there's, and in earlier, Okay, so this is where, alright, so in D it does distinguish between significant and unannounced. I mean, it's sort of like, they need to be formally documented only when a substantive issue concerning the potential organization of interest exists? Yes, and the reason I'm talking about discretion is that the contracting officer is the person who makes that call on the ground. And so, going all the way down the path, the appellant at the end of the day is asking this court to second guess the contracting officer. Okay, can I just ask you before you get to that, is it your reading, so now we've got another word. We have potential conflict, a significant potential conflict, and now we have a substantive issue concerning potential conflict. Is your view that substantive issue concerning potential conflict is in line with substantial? Or is this another kind of... I apologize, Your Honor. Where are you? The very last line of D. D. Yes, Your Honor. At that point, I interpret substantive issue meaning the contracting officer has identified a potential organizational conflict of interest, and at that point it has, at that point she has to document it. So, in other words, you read D as saying she has a chance to see if she can fix it up on her own. Yes, Your Honor. And if she doesn't believe she can fix it up on her own, then perhaps the person who believes she's going to have to do something prospectively, and that's when the need for higher level approval kicks in. Yes, ma'am. Unless, I take it, maybe I'm not understanding, again, exactly where all this fits in, but I thought I understood you to be saying unless she, when she looks at it, she finds a significant potential conflict of interest as opposed to a mere potential conflict of interest, in which case, even if she thinks she can fix it, she still has to run it before the head of the contracting agency, correct? Under C? Correct. Yes, sir. Because under the circumstances, if it is the classic organizational conflict of interest, for instance, the incumbent has drafted a statement of work or is involved in a statement of work or helps with the evaluation factors or anything along those lines, in that case that would be your classic example. And so, I think if it's something that egregious or that obvious, obvious is probably a better word, obvious. At that point, the contracting officer probably, on its face, that is an obvious conflict of interest, and that contract will almost certainly have to be either eliminated or, not almost certainly, but significant steps will have to be taken to avoid any conflict of interest down the road. And we also have to remember that... But all of this turns on the word significant. That's the magic word in all of this. It sounds like that we... All right. And I think this is why the court has announced in previous decisions and the court talks about the considerable discretion of the contracting officer because it gets complicated and it is so fact-specific. And as in this case, as every good process tends to be. But in this case, the appellant hasn't even challenged the factual determinations, and until it filed its reply brief, it had never challenged the underlying actions of the contracting officer. The only issue here is the head of the contracting activity did not sign off on the contracting officer's action. And in that case, we think that that's putting form over substance in the worst possible way. What happens if we were to disagree? I mean, if we find that there was a deficiency, we don't buy your alternative that they actually reviewed it. What's the relief here? To find another grounds, Your Honor? We think there's still sufficient other grounds. No. Let's assume we thought that a second-line approval was required. What happens in this case? In that case, we'd ask that the court still affirm the decision of the trial court, and we didn't argue it at all. Because of the alternative. Yeah. But let's assume we reject the alternative. Forgetting the alternative, Your Honor. Yeah. Appellants still can't show prejudice. Prejudice is a necessary element of every bid protest. And here, an appellant can't show any prejudice at all. Nor have they ever argued prejudice or attempted to show that they've suffered prejudice because of the award to ITP. So by prejudice, you mean sort of a but-for that they would have gotten the contract otherwise? Or what's... That they've been competitively harmed in any way, other than not winning the contract. But there are more that memory serves, Your Honor. There are multiple offer wars. And there's nothing in the record that suggests that an appellant was next in line for an award. They made no showing that they had a chance of winning the contract. So in order to show prejudice, they have to show that but-for this error or this oversight, they would have gotten the award? I can't remember the exact language for prejudice, Your Honor. I'm sorry. But yes, they have to show some form of prejudice to show that that they should win on this     We'll hear a rebuttal from Mr. Phillips. I'm pleased to be here. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. In 1968, Your Honor, the FAR was preceded by a 19-page DOD regulation known as the Armed Service Procurement Regulation. Organizational conflicts of interest are in essence a continuum, a continuum that this contracting officer took advantage of, and a continuum where her viewpoint of whether or not there was a potential organizational conflict changed. The continuum occurs when she incorporated in the solicitation a provision requiring the offerors to self-report any potential organizational conflicts of interest, and she reviewed what the offerors provided in October, and she made a... the situation presented to her when she made the initial award in December was different than the situation that she made some minor adjustments to the solicitation the preceding June. Organizational conflicts run from the time the solicitation is issued and before the solicitation is issued through the solicitation up to the award. It's a continuum. It's not simply pre-award and then everything is hunky-dory. What significance do you attach to the word significant and its presence and absence at various points in the regulations we've been discussing? 9504 generally gives the contracting officer discretion to decide whether or not there's an interest in the contract. If there is an interest, she needs to do something, and it says in C, that if she makes this decision, then she needs to get it through the head of the contracting activity. If she concludes that it involves a significant potential conflict of interest. All right. But if she says, well, there's a conflict of interest here potentially, but it's not significant. Is that something we should be paying close attention to, the difference in language between C, let's say, and D, which uses potential organizational conflict of interest but doesn't have the word significant in it? I think it's inconsequential, and I think it's inconsequential because the contracting officer, if you will, said to the GAO, let me go away. I won't bother with this. I'll fix it. There is a potential or a significant OCI. Which was the language that was used, do you recall? It's in the record. Okay. I'll find it. It's a one-page letter from her lawyer to the government accountability office. Okay. When significant, could it be interpreted as substantial? Yes. So it would have to be substantial in essence to have an OCI, which is reportable to the superior officer. Regulation, your honor, says significant. I understand what it says, but could it be interpreted as substantial? Yes, it could, but it wasn't interpreted that way. They told GAO they had a problem. They were going to address and they were going to do so appropriately is the word they used. Appropriate under 9506 means it is vetted by the head of the contracting activity and it never was. And on prejudice, let's talk about prejudice. There were three sample task orders and the issue is the scoring of those three sample task orders. Two of those sample task orders were tasks that the incumbent in large business was already had performed and was going to continue to perform. The third was one that was made up by the contracting officer and in her words she provided a lot of detail on. My client's score on the first two was very low and on the third was higher precisely because she leveled the playing field on the third and didn't level the playing field on the first two. There's the prejudice. We argued that to the court below. We argued that in the blue brief. No surprises. They did not obtain head of the contracting officer activity review approval and they were required by the rules to do so in that sample. We were prejudiced. Thank you. What relief would be appropriate if we agree with you? I believe the only relief that is appropriate, this is a two year contract with two 18 month options. I believe that this case ought to go back to the court below with direction to order the agency not to exercise the options and to re-compete this thing. Okay. Thank you. Thank you both counsel. The case is submitted.